# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | CRIMINAL ACTION NOS. |
| ) | |
| SANDRA M. MCSWEENEY, ) | 08- 1401-TSH |
| MICHAEL D. BENEDETTI, ) | 08- 1402-TSH |
| ROGER P. STANLEY, ) | 08- 1403-TSH |
| SCOTT C. SCHAEFFER-DUFFY, and ) | 08- 1404 TSH |
| KENNETH J. HANNAFORD-RICARDI, ) | 08- 1405-TSH |
| Defendants. ) | |

### DECISION AND ORDER ON MOTION FOR A DEFENSE OF NECESSITY
### July 24, 2008

**Hillman, M.J.**

### Nature of the Proceeding

Sandra M. McSweeney, Michael D. Benedetti, Roger P. Stanley, Scott D. Schaeffer-Duffy, and Kenneth J. Hannaford-Ricardi have each been charged in this Court with the following petty offenses: failure to comply with the lawful directions of authorized individuals (U.S. Marshals), in violation of 41 C.F.R. 102-74.385 and obstruction of the usual use of entrances and impeding performance of the official duties by Government employees, in violation of 41 C.F.R. 102-74.390 (b),(c). The charges arise as a result of the defendants' conduct at the Donohue Federal Building, 595 Main Street, Worcester, Massachusetts ("Donohue Building") on March 19, 2008.

Defendants have jointly filed a Motion for A Defense of Necessity (Docket No. 3)[1] ("Necessity Motion"). The Government has filed an opposition to that motion. On June 16, 2008, a hearing was held on the defendants' motion. Thereafter, both parties filed supplemental responses addressing issues raised at the hearing. *See* Docket Nos. 6 and 7.[2]

### Background

The following facts are undisputed: At approximately 8:25 a.m. on March 19, 2008, the defendants entered the main entrance of the Donohue Building; Schaeffer-Duffy informed the security officers of their intention to pray inside the courthouse lobby; when asked by Supervisory Deputy U.S. Marshal Thomas Bezanson ("Marshal Bezanson") if they obtained a permit from the General Services Administration ("GSA"), Schaeffer-Duffy answered they did not have a permit and he did not believe a permit was necessary[3]; and Schaeffer-Duffy stated that the purpose of the prayer was to promote change in the United States policy in Iraq.

Marshal Bezanson requested the individuals exit the Donohue Building. Instead the defendants dropped to their knees and began to pray for an end to Iraq war. The defendants were arrested after they finished the prayer.

### Discussion

The defendants have filed a joint motion seeking to raise a defense of necessity in their upcoming trial. The government opposes the motion, maintaining that the defense is unavailable under the circumstances of the case. The parties agree that the essential elements of the necessity

---

[1] Unless otherwise noted, Docket number references are applicable to all cases.
[2] Both parties are reminded that any filings made subsequent to the motion and opposition require leave of court. *See* LR, D.Mass. 7.1(B)(3). That being said, I have accepted both parties' supplemental filings.
[3] Schaeffer-Duffy contends that approximately five day prior to March 19, he delivered a letter to an unidentified security officer expressing the defendants intention to engage in a prayer meeting in the lobby of the Donohue Building. The process for obtaining a permit to demonstrate on federal property and the defendants attempts, if any, to comply with that process will be discussed in more detail, *infra* note 5.

2

defense are: 1) the actor(s) must face a choice of evils and choose the lesser evil; 2) the act must be performed to prevent or mitigate imminent harm to oneself or a third party; 3) the actor(s) reasonably expect the act to mitigate or prevent the imminent harm; and 4) the actor(s) have no legal alternatives available when making the choice to violate the law. *United States v. Maxwell*, 254 F.3d 21, 27 (1st Cir. 2001); *see also United States v. Bailey*, 444 U.S. 394, 100 S.Ct. 624 (1980).

Defendants assert that their evidence will establish that "nonviolent violation of petty offenses at the Donahue [sic] Federal Building is a far lesser evil than the imminent harm posed by the continuation of the American War in Iraq." *Necessity Motion*, at p. 5. Defendants further intend to establish 1) the existence of an emergency, *i.e.*, imminent harm in Iraq; and 2) the "historic effectiveness of nonviolent civil disobedience in abating numerous harms as well as the specific effectiveness of prayerful nonviolent civil disobedience at the Federal Building as a means of directly effecting government policy and ending the war." *Id.* The Government argues that the defendants' motion should be denied because they failed to establish any of the four elements of the defense, and, in particular, have failed to establish that they had no reasonable, legal alternative except to violate federal law. *See generally A.U.S.A. Karin M. Bell's Letter to the Court*. (Docket No. 4).

It is clear that the defendants' sincerely believe that the United States perpetuation of the conflict in Iraq will result in United States troops and Iraqi civilians being placed in imminent danger. It is also evident that the defendants believe holding a prayer meeting in a federal building would be an effective means of bringing attention to their opposition to the United States policy concerning the Iraq conflict and could influence the country's political leaders to end the

United States involvement in Iraq. Nevertheless, for the reasons set forth below, I find that the proffer made by the defendants in support of their request to assert a necessity defense is "insufficient as a matter of law to create a triable issue" and, therefore, their motion is denied. *See United States v. Ayala*, 289 F.3d 16, 26 (1st Cir. 2002).

The defendants recognize that the necessity defense is limited to a narrow category of situations and have attempted to distinguish their case from the myriad of others in which individuals engaging in civil disobedience for the purpose of altering government policy have been barred from pursuing the defense at trial. *See, e.g., Maxwell*, 254 F.39 at 26-29; *United States v. Sued-Jimenez*, 275 F.3d 1, 6–8 (1st Cir. 2001); *United States v. Broadhead*, 714 F. Supp. 593, 596-597 (D. Mass 1989). For example, at the hearing, Schaeffer-Duffy attempted to characterize the defendants' conduct as engaging in a prayer meeting rather than in a "protest." While the First Circuit has not directly addressed this issue, the Seventh Circuit determined that "prayer meetings" held on federal property fall within the same legal category as other protest demonstrations. *See United States v. Quilty*, 741 F.2d 1031, 1034 (7th Cir. 1984) (per curium).

Additionally, with respect to the second element of the defense[4], the defendants seek to have this Court construe what constitutes "imminent harm" more broadly than prior courts which have addressed the issue. However, it has generally been held that for harm to be "imminent", the danger must not be physically distant or abstract, but so pressing that only immediate action averts the danger. *See Maxwell,* 254 F.3d at 27-28*; see also Broadhead*, 714 F.Supp. at 593. The defendants' prayer meeting, as a matter of law, could not have the tangible, immediate effect of saving the lives of Iraqi civilians or United States soldiers based in Iraq.

---

[4] For purposes of this Decision and Order, I will assume that the defendants have satisfied the first element of the defense, *i.e.*, they chose the lesser of two evils.

As to the third element of the necessity defense, the defendants argue that expert and eyewitness testimony—by United States soldiers who served in Iraq, humanitarians, a theologian, and the defendants themselves—will prove that their civil disobedience was a direct means of altering government policy and effecting the United States approach to Iraq, thereby mitigating harm to third parties. *See Necessity Motion,* at p. 5. However, in order to satisfy this element, defendants must show a causal relationship between their conduct and the achievement of their goal, *i.e.*, such harm would be averted by their actions. *See Maxwell*, 254 F.3d at 28 ("the defendants must demonstrate cause and effect between an act of protests and the achievement of the goal of the protest by competent evidence."); *see also Broadhead*, 714 F.Supp. at 597 (quoting *Kabat*, 797 F.2d at 591). The defendants' proffer is insufficient, as a matter of law, to support the conclusion that their prayer meeting in the lobby of the Donohue Building on March 19 would have an impact on the United States policy regarding Iraq. *See Sued-Jimenez*, 275 F.3d at 7 (holding no evidence to support appellants claim that their protest would cause change to United States Naval policy.)

As to the fourth element, *i.e.*, that the defendants had "no legal alternative", they argue that they have satisfied this requirement because they previously attempted other legal means to bring an end to the Iraq war. The standard is not *efficient* legal alternatives, but rather available, lawful courses of action. *See Broadhead*, 714 F. Supp. at 597 (noting "success [of legal alternatives] is not the measure"). Thus, despite the defendants attempts through legal means which have seemingly failed to adequately address their goal, the defendants have not established that when they engaged in their prayer meeting they were bereft of legal alternatives. *See Maxwell,* 254 F.3d at 29 (finding a defendant's "legal alternative will rarely be deemed exhausted

when the harm… can be palpitated by political action"); *see also United States v. Dorrell*, 758 F.2d 427, 432 (9th Cir. 1985) (finding "no legal alternative" established if the only available option was unlawful conduct). Consequently, the fourth element required for the necessity defense has not been established because the defendants had other legal alternatives besides violating federal law. [5]

"Civil disobedience can be an act of great religious and moral courage and society may ultimately benefit. But if the law being violated is constitutional, the worthiness of one's motives cannot excuse the violation in the eyes of the law." *United States v. Platte*, 401 F.3d 1176, 1181 (10th Cir. 2005). Because preservation of the democratic process is paramount, "[t]he necessity defense was never intended to excuse criminal activity by those who disagree with the decisions and policies of the lawmaking branches of government: in such cases the 'greater harm' sought to be prevented would be the course of action chosen by the elected representatives, and a court

---

[5] In support of their position that they had no legal alternative than to conduct their prayer meeting in the manner which led to their arrest, the defendants argued at the hearing that there is no process by which they could have held a lawful demonstration in the courthouse lobby. The defendants have expounded on this argument in their supplemental filing in which they state that they inquired of the U.S. Marshal Service how to obtain a permit, and were told by the supervisory assistant U.S. Marshal on duty that neither he nor his superiors were aware of any permit process and, to the best of his knowledge, only people with official business were permitted to enter the building. Unfortunately, the defendants directed their inquiries to the wrong agency. The regulations governing federal buildings clearly provide individuals must obtain a permit to conduct the type of activities engaged in by the defendants. *See* 41 C.F.R. § 102-74.465. Furthermore, the application for such a permit must be addressed to the building manager and must contain the information set forth in the regulation. *See* 41 C.F.R. § 102-74.465; *see also* 41 C.F.R. §102-74.470. The agency–in this case, the GSA–then has ten business days within which to consider the permit application. *See* 41 C.F.R. §74.480. Among the reasons a permit may be denied is that the proposed activity might interfere with access to the public area or would disrupt official use of the property. *See* 41 C.F.R. §102-74.500. As mentioned previously, Schaeffer-Duffy stated that he sent notice to the courthouse concerning the defendants intent to hold a prayer meeting at the Donohue Building on March 19. However, even if I assume that the notice was addressed to the building manager and that it contained all the information required by the regulations (and therefore, could be deemed an application for a permit), the GSA has ten business days to consider whether to issue a permit. Since the notice was delivered to the court only five days prior to the proposed demonstration, it was untimely. The bottom line on this issue is that a permit was required to hold the type of demonstration envisioned by the defendants and it is undisputed that no permit was obtained. It is black letter law that ignorance of the regulation, like ignorance of a statute, does not excuse criminal conduct. *See United States v. Maxwell-Anthony*, 129 F.Supp.2d 101 (D. P. R. 2000). Further, it is axiomatic that "[p]ersons dealing with the government are charged with knowing government statutes and regulations, and they assume the risk that government agents may exceed their authority and provide misinformation." *Lavin v. Mursh*, 644 F.2d 1378, 1383 (9th Cir. 1981).

allowing the defense would be making a negative political or policy judgment about that course of action." *United States v. Candelas*, 110 F. Supp.2d 39, 40-41 (D. P. R. 2000) (quoting *United States v. Kabat*, 797 F.2d 580, 591 (8th Cir. 1986)). For the reasons set forth above, I find the defendants are not entitled to raise a necessity defense.

## **Conclusion**

The defendant's Motion for a Defense of Necessity (Docket No. 3) is <u>denied</u>.

/s/ Timothy S. Hillman
**TIMOTHY S. HILLMAN**
**MAGISTRATE JUDGE**